## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN GREER,<br><br>      Plaintiff,<br><br>v.<br><br>BUCKEYE PARTNERS, L.P., BUCKEYE GP LLC, PIETER BAKKER, BARBARA M. BAUMANN, BARBARA J. DUGANIER, JOSEPH A. LASCALA, JR., MARK C. MCKINLEY, LARRY C. PAYNE, OLIVER G. RICARD, III, CLARK C. SMITH, FRANK S. SOWINSKI, and MARTIN A. WHITE,<br><br>      Defendants. | CASE NO.: 19-5741<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |

Plaintiff John Greer ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a unitholder of Buckeye Partners, L.P. ("Buckeye" or the "Company") brings this action against the members of Buckeye's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to IFM Global Infrastructure Fund, a wholly owned subsidiary of IFM Investors ("IFM").

2. On May 10, 2019, IFM and the Company announced they had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which the Company would merge into a subsidiary of IFM Global Infrastructure Fund, Hercules Intermediate Holdings LLC

("Parent"), through its subsidiary, Hercules Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").  Under the terms of the Merger Agreement, Buckeye unitholders will receive $41.50 in cash in exchange for each common unit of Buckeye (the "Merger Consideration").  At the time of the announcement, the Proposed Transaction was valued at approximately $10.3 billion in enterprise value and $6.5 billion in equity value.

3. On June 7, 2019, Buckeye filed a Preliminary Proxy Statement on Form PREM14A (the "Proxy") with the United States Securities & Exchange Commission.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the financial analysis performed by the Company's financial advisor, Wells Fargo Securities, LLC ("Wells Fargo"), the financial projections used by Wells Fargo in preparing its fairness opinion, and the potential conflicts of interest faced by the Company's other financial advisor, Intrepid Partners, LLC ("Intrepid"), in advising the Board to enter into the Merger Agreement and recommend the Proposed Transaction.

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving unitholder approval for, the Proposed Transaction.

6. The unitholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful Unitholder Vote, the Proposed Transaction will be consummated.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the unitholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Buckeye common units, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common units are listed and traded on the New York Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

## PARTIES AND RELEVANT NON-PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of Buckeye common units.

12. Defendant Buckeye is a limited partnership organized and existing under the laws of the state of Delaware. It maintains principal executive offices at One Greenway Plaza, Suite 600, Houston, Texas, 77046. Buckeye common units are listed for trading on the New York Stock Exchange under the ticker symbol "BPL."

13. Defendant Buckeye GP LLC ("Buckeye GP") is the general partner of Buckeye and is a Delaware limited liability company.

14. Defendant Pieter Bakker has served as a director of Buckeye GP since 2011.

15. Defendant Barbara M. Baumann has served as a director of Buckeye GP since 2011.

16. Defendant Barbara J. Duganier has served as a director of Buckeye GP since 2013.

17. Defendant Joseph A. LaScala, Jr. has served as a director of Buckeye GP since 2010.

18. Defendant Mark C. McKinley has served as a director of Buckeye GP since 2007.

19. Defendant Larry C. Payne has served as a director of Buckeye GP since 2014.

20. Defendant Oliver G. Richard III has served as a director of Buckeye GP since 2009.

21. Defendant Clark C. Smith has served as the Chairman, President, and Chief Executive Officer of Buckeye GP since 2014.

22. Defendant Frank S. Sowinski has served as a director of Buckeye GP since 2006 and serves as the Lead Independent Director.

23. Defendant Martin A. White has served as a director of Buckeye GP since 2010.

24. Defendants referenced in ¶¶ 14 through 23 are collectively referred to as Individual Defendants and/or the Board.

25. Relevant non-party IFM is an investment fund manager with principal executive offices located at Level 29 Casselden 2 Lonsdale Street, Melbourne, VIC 3000, Australia. IFM manages IFM Global Infrastructure Fund.

**FURTHER SUBSTANTIVE ALLEGATIONS**

26. On July 12, 2018, the Company issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

4

HOUSTON and NEW YORK, May 10, 2019 (GLOBE NEWSWIRE) -- IFM Investors and Buckeye Partners, L.P. (NYSE: BPL) today announced a definitive agreement ("Agreement") under which the IFM Global Infrastructure Fund will acquire all of the outstanding public common units of Buckeye for $41.50 per common unit. The all-cash transaction is valued at $10.3 billion enterprise value and $6.5 billion equity value. The acquisition price represents a 27.5% premium to Buckeye's closing unit price on May 9, 2019 and a 31.9% premium to Buckeye's volume-weighted average unit price since November 1, 2018, which is the last trading day prior to Buckeye's announcement of certain strategic actions. Buckeye's Board of Directors unanimously approved the proposed transaction with IFM. The closing of the merger will be subject to approval of a majority of the Buckeye unitholders, certain regulatory approvals and other customary closing conditions.

Buckeye owns and operates one of the largest diversified networks of integrated midstream assets, including 6,000 miles of pipeline with over 100 delivery locations and 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels. Its network of marine terminals is located primarily in the East Coast and Gulf Coast regions of the United States, as well as in the Caribbean.

IFM is a pioneer and leader in infrastructure investing on behalf of institutional investors globally, with a 23-year track record of success. IFM has $90 billion of assets under management, including $39.1 billion in infrastructure, which it manages on behalf of more than 370 institutional investors, and takes a long-term approach to investing, with no pre-determined time divestiture horizon. IFM targets core infrastructure in developed markets and currently has interests in 32 investments across North America, Australia and Europe, including several midstream assets.

"This acquisition is aligned with IFM's focus on investing in high quality, essential infrastructure assets that underpin the economies in which they operate," said Julio Garcia, Head of Infrastructure, North America of IFM.

"We are pleased to have the opportunity to bring the Buckeye business and management team under the IFM umbrella," said Jamie Cemm, Executive Director of IFM. "The proposed acquisition of Buckeye is a complementary addition to IFM's substantial investments in energy infrastructure across North America and globally. We look forward to supporting the continuing growth of the business."

"Buckeye's Board of Directors recently reviewed strategic options for the business and determined that IFM's proposal to acquire Buckeye is in the best interest of Buckeye," said Clark C. Smith, Chairman, President and Chief Executive Officer of Buckeye. "The proposed transaction will provide immediate and enhanced value for our unitholders with an attractive premium

that accelerates long-term returns and represents the underlying value of our business. In addition, the proposed transaction will provide Buckeye with superior access to capital to execute on its long-term business strategy. We look forward to this next chapter in Buckeye's 133-year story."

**Additional Information**

Closing of the transaction is expected to occur in the fourth quarter of 2019 and is subject to customary closing conditions. Pending transaction close, the companies will continue to operate independently.

Evercore Group LLC is acting as lead financial advisor to IFM, and Credit Suisse, Goldman, Sachs & Co. LLC and BofA Merrill Lynch are acting as financial advisors to IFM. White & Case LLP and Baker Botts LLP are acting as legal advisors to IFM. Intrepid Partners, LLC and Wells Fargo Securities, LLC are acting as financial advisors and Cravath, Swaine & Moore LLP is acting as legal advisor to Buckeye.

**The Proxy Misleads Buckeye Unitholders by Omitting Material Information**

27.     On June 7, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Buckeye unitholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning Wells Fargo's financial analyses, and the potential conflicts of interest faced by Intrepid in advising the Company to enter into the Proposed Transaction.

*Material Omissions Concerning Wells Fargo's Financial Analyses*

28.     The Proxy describes Wells Fargo's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Wells Fargo's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Buckeye's unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Wells Fargo's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Buckeye's unitholders.

29. With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the inputs and assumptions underlying the discount rates ranging from 7.84% to 8.34%, the specific inputs and assumptions used to calculate Buckeye's perpetuity growth rates of 1.00% to 2.00%.

30. With respect to Wells Fargo's *Discounted Distributions Analysis*, the Proxy fails to disclose the specific inputs and assumptions used to calculate Buckeye's perpetuity growth rates of 0.00% to 2.00%, and the specific inputs and assumptions used in calculating the cost of equity range of 9.80% to 10.30%.

*Material Omissions Concerning Potential Conflicts of Interest*

31. The Proxy fails to disclose the potential conflicts of interest faced by Intrepid in advising the Company during the process leading up to the Merger Agreement.

32. The Proxy discloses that Intrepid has served as a financial advisor to the Company throughout the process, as early as February 6, 2018. Intrepid advised the Company regarding the Proposed Transaction, negotiated with other potential strategic and financial partners, and prepared financial analyses of the Company.

33. Furthermore, the Board engaged Intrepid as a financial advisor with respect to a potential transaction at the same time it engaged Wells Fargo for the same role, in July 2018.

34. Intrepid worked hand in hand with Wells Fargo to advise the Company's Board and work with Company management toward a strategic transaction.

35. At the beginning of the process, Intrepid provided the Board with its opinion regarding the ultimate fairness of any merger consideration by presenting "an illustrative financial analysis of the Partnership's standalone valuation based on public filings and publicly available equity research."

36. This analysis of the standalone valuation of the Company represents a "report, opinion . . . or appraisal" that materially relates to the Proposed Transaction under 17 CFR § 229.1015(a).

37. Despite this level of participation in the process, the Proxy is silent regarding the potential conflicts of interest faced by Intrepid. The Proxy does not disclose the compensation that Intrepid will receive from Buckeye as a result of the process leading to the Proposed Transaction, contingent or otherwise. The Proxy also fails to disclose the history of engagement between Buckeye and Intrepid over the two years leading up to the Merger Agreement, or the compensation paid to Intrepid by Buckeye over that time.

38. Most importantly, the Proxy is silent regarding the relationship between Intrepid and IFM, including any services provided by Intrepid to IFM, or and compensation paid between the two entities and their affiliates.

39. These omissions directly impugn the independence of Intrepid and materially mislead Buckeye's unitholders as to the ability of Intrepid to act in the best interest of Buckeye and its unitholders when providing financial advice leading up to the Proposed Transaction. By omitting this information, the Proxy permits the inference that Intrepid has not performed any services for Buckeye or IFM without any affirmative statement regarding unpaid services. If Intrepid has not been engaged by Buckeye, the Proxy must affirmatively reflect those facts and disclose facts regarding all conflicts of interest faced by Intrepid.

40. The omission also violates 17 CFR § 229.1015. This section requires the disclosure of any material relationship existing "during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship

between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates."

41. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company unitholders will continue to suffer absent judicial intervention.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Buckeye**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Buckeye is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available unitholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's unitholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Buckeye within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Buckeye and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

10

herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 19, 2019

Respectfully submitted,

By: /s/ *William Fields*
William Fields (#5054952)
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: wfields@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
　　　　etripodi@zlk.com

*Attorneys for Plaintiff*